## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JOHN SWENSON,

Plaintiff,

v.

BOARD OF EDUCATION OF THE
CITY OF CHICAGO, JANICE
JACKSON, and DEBRA
NIKOKAVOURAS,

Defendants.

Case No. 20-cv-06558

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

John Swenson, a Chicago Public Schools teacher, filed this employment discrimination action against the Board of Education of the City of Chicago, Dr. Janice Jackson, and Deborah Nikokavouras. Swenson brings a number of discrimination and retaliation claims. Defendants have moved for summary judgment. For the reasons stated below, Defendants' motion for summary judgment (Dkt. 68) is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are

1

material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## BACKGROUND[1]

### I.    Swenson's Employment at McPherson

Swenson began working for the Board of Education of the City of Chicago ("Board") in 2007. Defs.' 56.1 ¶ 2. He is a white, gay man over 40 years old. *Id*. In 2013, Swenson

---

[1] The facts are taken from Defendants' Rule 56.1 statement (Dkt. 69). The Court agrees with Defendants that some of Swenson's 56.1 responses do not comply with Local Rule 56.1, as they are unsupported by evidence or offer argument instead of a response in the form required by the rule (Dkts. 79, 84). The facts herein are considered undisputed unless otherwise noted.

2

started working as a music teacher at McPherson Elementary School ("McPherson") in Chicago, which serves approximately 650 students from pre-kindergarten through eighth grade. *Id.* ¶¶ 3, 13. Diverse learners are students that require some form of special education services, and the typical Chicago Public School student population is between 5 and 10% diverse learners. *Id.* ¶ 14. McPherson's student population has 33% diverse learners and is much larger than typical. *Id.* ¶ 14.

The Illinois State Board of Education (ISBE) requires that education is provided to diverse learners and any failure to provide students with specialized education services can result in legal consequences. *Id.* ¶ 15. Therefore, it is important to fill a special education teaching vacancy quickly. *Id.* Even though there are more special education job openings than other teacher jobs, there is a shortage of special education teachers. *Id.* ¶ 16. Special education teachers must have an LBS 1 endorsement, which consists of four college courses and a four-hour test at the teacher's expense. *Id.* ¶ 18.

## II. Reassignment to Special Education

On August 9, 2019, Principal Nikokavouras learned that Pat Williams, a special education teacher at McPherson, was seeking to transfer to another school. *Id.* ¶ 29. Ms. Williams' transfer was approved effective August 18 and created a vacancy for a special education teacher at McPherson. *Id.* There was urgency to fill the vacancy, with students returning to school on September 3. *Id.* ¶ 30. Principal Nikokavouras spoke to her human resource business partner (HRBP), Jennifer Gore, who suggested that she determine whether any teachers in her building had a LBS 1 endorsement.

Case: 1:20-cv-06558 Document #: 85 Filed: 07/05/23 Page 4 of 11 PageID #:1200

*Id.* ¶ 33. Nikokavouras determined that Swenson and one other teacher had an LBS 1. *Id.* ¶ 34. In September 2019, Swenson was reassigned as a special education teacher and remains in that position. *Id.* ¶ 3.

### III.    OIG Complaint, Grievance, and Warnings

Before his reassignment, Swenson filed a complaint with the Office of Inspector General (OIG) against Principal Nikokavouras. *Id.* ¶ 50. The OIG closed the investigation, however, because the "[c]ase had marginal value or no cost benefit." *Id.*; Defs.' Ex. 27. After his reassignment, Swenson received two warnings from Principal Nikokavouras. *Id.* ¶¶ 59, 67. In November 2019, Swenson received the first warning after he told McPherson's new music teacher that she would lose her job. *Id.* ¶¶ 57, 59; Defs.' Ex. 35. In March 2020, Swenson received a second warning that resulted from intimidating other coworkers and outbursts during the disciplinary process. Defs.' 56.1 ¶¶ 62–67; Defs.' Ex. 44. HRBP Gore reviewed both warnings before they were finalized to ensure they were supported by evidence, objective, and consistent with all collective bargaining agreements, Board policies, and guidelines. *Id.* ¶ 60, 68. Swenson also filed a grievance and complained to the Board's Equal Opportunity Compliance Office ("EOCO") regarding his reassignment as well as comments made by Principal Nikokavouras. *Id.* ¶ 48.

### ANALYSIS

Swenson brings discrimination and retaliation claims under the Illinois Whistleblower Act ("IWA") (Count I), Age Discrimination and Employment Act

4

("ADEA") and Illinois Human Rights Act ("IHRA") (Count III), Illinois Civil Rights Act ("ICRA") (Count V), and Title IX (Count IV).[2]

Swenson may prove each of his claims under *Ortiz* or the *McDonnell Douglas* burden-shifting framework. Under *Ortiz*, the question is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff 's race, ethnicity, sex religion, or other proscribed factor caused the . . . adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Under the *McDonnell Douglas* burden-shifting framework, Swenson must show that "(1) he belongs to a protected class; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) another similarly situated employee outside of his protected class received better treatment from his employer." *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021). Each of his claims apply the same standard. *See Keen v. Merck Sharp & Dohme Corp.*, 819 F. App'x 423, 428 (7th Cir. 2020) (citing 740 ILCS 174/15) (IWA standard); *Teruggi v. CIT Grp./Cap. Fin., Inc.*, 709 F.3d 654, 659 (7th Cir. 2013) (ADEA and IHRA); *Rosa v. Board of Trustees of the Univ. of Illinois*, No. 18-CV-8477, 2020 WL 7319574, at *10 (N.D. Ill. 2020) (ICRA); *Burton v. Bd. of Regents of Univ. of Wisconsin Sys.*, 851 F.3d 690, 696 (7th Cir. 2017) (Title IX).

---

[2] This Court previously dismissed Swenson's claims alleging breach of contract, discrimination, harassment and retaliation under Title VII, intentional infliction of emotional distress and violation of 42 U.S.C. Sec. 1983 with prejudice. (Dkt. 18).

### A. Adverse Action

Swenson does not dispute that each of his claims requires that he suffered an adverse employment action. He contends that the Court should find that his "involuntary transfer was an adverse job action [that] is a question of fact for the jury." (Dkt. 80 at 6). Defendants argue that the reassignment to special education and two warnings were not adverse acts, dooming all of Swenson's claims. (Dkt. 70 at 5).

"A materially adverse employment action is more than a mere inconvenience or an alteration of job responsibilities." *Dass v. Chi. Bd. of Educ.*, 675 F.3d 1060, 1069 (7th Cir. 2012). "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir.2004). "Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Id.*

Under Seventh Circuit law, three groups of cases involve materially adverse employment actions: "1) the employee's current wealth such as compensation, fringe benefits, and financial terms of employment including termination; (2) the employee's career prospects thus impacting the employee's future wealth; and (3) changes to the employee's work conditions including subjecting [him] to humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alteration in [his] work place environment." *Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 730 (7th Cir. 2009) (cleaned up).

6

### 1. Reassignment

Swenson argues that here the adverse job action was his "reassignment with significantly different responsibilities". (Dkt. 80 at 3) (quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). It is true that reassignment to a position with significantly different job responsibilities can constitute an adverse employment action, but it is well-settled that the standard requires a "*significant* change in employment status, such as . . . reassignment with *significantly* different responsibilities." *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 n.35 (7th Cir. 2017) (emphasis added). Swenson's evidence does not raise an issue of material fact that his reassignment amounted to an adverse action, and the authority he relies on does not demonstrate that he can avoid summary judgment.

The cases cited by Swenson actually support Defendants' position. In *Hickman*, the plaintiff was a part-time employee at a retail store who alleged that her financial status was impacted because her hours were reduced. *Hickman v. Fam. Dollar, Inc.*, No. 21-cv-833, 2021 WL 4401498, at *4 (N.D. Ill. Sept. 27, 2021) (decided on a motion to dismiss). Here, it is undisputed that Plaintiff's reassignment did not impact his financial status. Def. 56.1 ¶ 4. In *Levy*, the Seventh Circuit found that plaintiff police officer raised an issue of fact about whether he suffered an adverse action because his badge, gun, and credentials were removed, he had a two-week suspension, and was reassigned to the day shift, resulting in loss of "substantial opportunities for extra overtime, nighttime, and holiday pay." *Levy v. Wilkie*, 841 F. App'x 987, 994 (7th Cir. 2021). By contrast, it is undisputed that Swenson remained a CPS teacher at

McPherson. Def. 56.1 ¶¶ 3–4. And Swenson does not argue that he suffered any change in tenure, pay, benefits or hours.

Finally, in *Nichols*, the Seventh Circuit "cautioned [] that cases in the second category 'are to be distinguished from cases involving a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance.'" *Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) (quoting *O'Neal*, 392 F.3d at 911). The Seventh Circuit noted that "'[a] transfer involving no reduction in pay and no more than a minor change in working conditions will not do, either.'" *Nichols*, 510 F.3d at 780 (quoting *O'Neal*, 392 F.3d at 911–12). Here, it is undisputed that Plaintiff never had a reduction in his salary or change in his benefits or working conditions. *Cf. Johnson v. Johnson & Johnson*, 67 F. Supp. 3d 1001, 1010 (N.D. Ill. 2014) (even reassignment with some impact on plaintiff's bonus did not constitute adverse employment action).

Swenson's attempt to distinguish Defendants' cases is not persuasive. (Dkt. 80 at 5–6). In *Lucero*, the court found a teacher's reassignment from high school to middle school was not an adverse act when her compensation and benefits remained unchanged. 566 F.3d at 729, 731. Swenson argues that the reassignment from a music class with some diverse learners to a special education teacher is different because, for example, he has to write IEPs and differentiate instruction for students. (Dkt. 80 at 5–6). The Court recognizes that Swenson's job responsibilities changed and acknowledges the unique and important role played by special education teachers. However, the facts in this case show that Swenson's reassignment was a lateral

8

change involving some change in responsibilities, but otherwise did not involve change Swenson's working conditions, benefits, compensation or other circumstances that would amount to a *materially adverse* employment action.

Indeed, in *O'Neal,* where a police officer's transfer from the Narcotics Unit to beat sergeant resulted in *less overtime opportunities* and *less flexible work hours,* the Seventh Circuit still held it was *not* an adverse act. *O'Neal*, 392 F.3d at 912–13. As the court in *O'Neal* explained, "[b]y definition, any lateral job transfer will result in changes to an employee's job responsibilities and work conditions." *Id*. at 913. But in a discrimination suit, "a plaintiff must show something more than the ordinary difficulties associated with a job transfer." *Id*. In short, Swenson has not presented sufficient evidence to raise an issue for a jury about whether his reassignment was an adverse action.

## 2. Warnings

Next, Defendants also argue that the two warnings received by Plaintiff were not adverse actions. (Dkt. 70 at 6). Plaintiff does not directly respond to Defendants' argument that the warnings do not constitute adverse acts. (Dkt. 80 at 3–6). Thus, Plaintiff has waived any argument that the warnings were adverse acts. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *see also G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("The obligation to raise the relevant arguments rests squarely with the parties").

Even if waiver did not apply, the Court would find the two warnings issued to Plaintiff are not adverse acts. "[A] negative evaluation or admonishment by an employer does not rise to the level of an adverse employment act." *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 731 (7th Cir. 2004). "There must be some tangible job consequence accompanying the reprimand to rise to the level of a material adverse employment action; otherwise every reprimand or attempt to counsel an employee could form the basis of a federal lawsuit." *Id.* Indeed, the Seventh Circuit has held that the Board's negative performance reviews and performance improvement plans do not constitute adverse acts. *Fields v. Bd. of Educ. of City of Chicago*, 928 F.3d 622, 626 (7th Cir. 2019); *see also Brown v. Colgate-Palmolive Co.*, No. 1:04-cv-0782-DFH-WTL, 2006 WL 517684, at *16 (S.D. Ind. Mar. 2, 2006) ("a written reprimand generally is not considered an adverse employment action unless it carries with it a concrete effect on an employee's position, pay, benefits, or prospects with the employer").

Here, Swenson received two warnings and admits they did not result in termination, suspension, a reduced salary, or change in benefits. Def. 56.1 ¶ 4. Put another way, Swenson faced no tangible job consequences from the two warnings. *See Lucas*, 367 F.3d at 731. Thus, the warnings were not adverse actions.

In sum, Swenson's claims fail because the lack of adverse action is dispositive. *See Lewis v. Wilkie*, 909 F.3d 858, 871 (7th Cir. 2018) (affirming summary judgment in part based on "dispositive issue that none of the alleged retaliatory actions constituted a materially adverse action"). Because this issue is dispositive, the Court

does not need to address the other of elements of the claims or issues raised by the parties.

## CONCLUSION

For the stated reasons, Defendants' motion for summary judgment (Dkt. 68) is granted. The Clerk is directed to enter judgment in Defendants' favor and against Plaintiff and terminate the case.


E N T E R:

Dated: July 5, 2023

_____
MARY M. ROWLAND
United States District Judge

11